*In re* ESTATE OF ALICE BAKER, Deceased (Sharon Chapman, Ex'x of the Estate of Alice Baker, Petitioner, v. Leland Finnegan, Respondent-Appellee (John J. Wosik, Petitioner-Appellant)).

Third District   No. 3—92—0436

Opinion filed March 29, 1993.

Louis E. Olivero & Associates, of Peru (Louis E. Olivero, of counsel), and John J. Wosik, *pro se*, of Henry, for appellant.

John R. Pusey, of Vonachen, Lawless, Trager & Slevin, of Peoria (Thomas H. Trager, of counsel), for appellee.

Eric S. Swartz, of Swengel & Swartz, of Henry, for Sharon L. Chapman.

JUSTICE BRESLIN delivered the opinion of the court:

The decedent, Alice Baker, died testate on December 16, 1990. A petition to probate her will and for letters testamentary was filed on January 3, 1991. The executrix of the will filed a final report for the estate on July 17, 1991. Her final report included the payment of $8,000 in attorney fees to the attorney for the estate, John J. Wosik. Leland Finnegan, a residuary heir of the estate, filed objections to the final report contending that the fee taken by attorney Wosik was grossly excessive considering the complexity and size of the estate. Following a hearing on the objections to the final report, the trial court found that Wosik's fee was unreasonable and unjustified given such a simple estate case. The trial court further found that the time log filed by Wosik was not only "ludicrous but sanctionable pursuant to Supreme Court Rule 137." The court concluded that a reasonable attorney fee would have been $2,500. The court then awarded Wosik's $2,500 attorney fee to opposing counsel as a sanction. The trial court denied Wosik's motion to reconsider. He appeals the court's sanction order. We reverse and remand for further proceedings.

The record shows that the decedent's will named Sharon Chapman as executrix of the will and requested that she employ John J.

Wosik to represent her estate. The will named Leland Finnegan as alternate executor.

Shortly after the decedent's death, Finnegan went to the decedent's apartment thinking that he had been appointed executor of her estate. He obtained a key to the apartment and searched it. According to Finnegan, he did not return to the apartment after he left it that day. A couple of days later, Finnegan went to Wosik's law office and was informed by Wosik's secretary that he was not the estate's executor. About two weeks later, Finnegan gave the decedent's apartment key to Wosik's secretary.

Wosik testified at the hearing on the objections to the final report that around December 20, 1990, he talked to his secretary of 20 years on the telephone and directed her to perform certain preliminary work to open the Baker estate. The preliminary work involved establishing the heirship of the decedent, obtaining the necessary addresses of the heirs, and preparing a petition to admit the will to probate. Wosik's secretary prepared the petition to probate the will and for letters testamentary. Wosik explained that he was in Mexico from sometime prior to the decedent's death until the end of January 1991. He claimed that he was in contact with his secretary on the phone about the case. Wosik testified that phone company records showed that he had had nine phone conversations with his secretary while in Mexico. They were for a total of 87 minutes. He claimed that he made other calls, but they were not included in the phone company records because they were calls that he made to his secretary from Mexico.

Wosik filed his time log on September 3, 1991. It listed a total fee of $9,869.40, which represented 109.66 hours of work at $90 an hour. Wosik's time log included 23.75 hours for time billed while he was in Mexico. It also included 18.5 hours for time worked after the filing of the objections to the final report. At the conclusion of his time log, Wosik stated:

"[T]he above itemized time log consists of an accurate and correct time consumed by the undersigned legal office as an Attorney at Law required and necessary to fulfill the responsibilities of the Executor in the administration of the Estate of Alice Baker, Deceased, and that the same is reasonable as to this individual estate having unique, individual, unusual, and extraordinary conditions generated by the uncooperative conditions created by a beneficiary to fulfill the obligations of the Executor herein ***."

Wosik explained at the hearing that it was necessary to bill so many hours because there were 34 potential heirs who had to be

given notice. Furthermore, Finnegan's entry into the decedent's apartment made it necessary to conduct an extensive inventory to determine if any assets were missing. Wosik admitted that there were no liens, no claims, no Federal estate tax, no contest to collect any assets and no court proceedings necessary to protect or sell any assets of the estate. Wosik further admitted that his final report failed to include $6,700 in interest income earned by the assets of the estate from the date of the decedent's death until the date of the filing of the final report.

The executrix's final report listed the total assets of the estate as $90,830. Wosik's fee amounted to over 8% of those assets.

At the conclusion of the hearing on the objections to the final report, the trial court noted that even with the original difficulty with Finnegan, it would be hard to imagine a more simple estate case. The court found that attorney Wosik's time log was "ludicrous" and "sanctionable." The court further found that Wosik was only entitled to $2,500 in attorney fees. The court, however, reduced those fees to zero as a sanction, and instead awarded the opposing law firm $2,133 in attorney fees and $390.40 in deposition costs. The court further ordered that opposing counsel's fees and deposition costs be paid from the estate.

On appeal, Wosik argues that the probate court erred in imposing sanctions without first conducting a hearing on that issue. He further argues that the court was required to make specific factual findings supporting its order of sanctions. He points out that the court, in deciding to impose sanctions, did not identify any statement in his time log that was untrue. Therefore, he argues, the probate court's order did not fall under the criteria for imposing sanctions contemplated by Illinois Supreme Court Rule 137 (134 Ill. R. 2d 137).

■ A trial court's decision regarding whether to impose sanctions is entitled to considerable deference, and its decision will not be reversed on appeal absent an abuse of discretion. (*Yassin v. Certified Grocers of Illinois, Inc.* (1990), 133 Ill. 2d 458, 551 N.E.2d 1319.) However, the predicate to such deference is that the trial court make an informed and reasoned decision. (*In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 559 N.E.2d 571.) For that reason, it has been noted that a hearing ought to be held to give the parties involved an opportunity to present any evidence needed to substantiate or rebut the claim for sanctions, and an opportunity to argue their positions. (*In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 559 N.E.2d 571.) Furthermore, a trial court's decision on sanctions must clearly set forth the factual basis for the result reached in order to be afforded defer-

ential treatment. *Bertuli v. Gaull* (1991), 215 Ill. App. 3d 603, 574 N.E.2d 1390.

In the present case, the record shows that the probate court failed to conduct an evidentiary hearing on the issue of sanctions imposed under Rule 137. We hold that a trial court must allow for an evidentiary hearing before imposing sanctions. Accordingly, we reverse and remand the cause for a hearing on whether sanctions are appropriate here.

Additionally, we note that Rule 137 provides in part that the signature of an attorney on a paper constitutes a certificate by him that he has read the paper and that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact. (134 Ill. 2d R. 137.) Because the rule is penal in nature, it must be strictly construed and accordingly each of its requirements must be specifically proved. (*Mancuso v. Beach* (1986), 149 Ill. App. 3d 188, 500 N.E.2d 589.) Rule 137 is not meant to punish losing parties who fail to adequately support their legal positions. (*Grab v. Keller* (1991), 224 Ill. App. 3d 1, 586 N.E.2d 361.) A party requesting attorney fees under Rule 137 has the burden of showing both that statements in the pleading were untrue and that they were made without reasonable cause. (*Couri v. Korn* (1990), 202 Ill. App. 3d 848, 560 N.E.2d 379.) The standard for evaluating an attorney's conduct is one of reasonableness under the circumstances existing at the time of the filing of the paper. (*Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 569 N.E.2d 1182.) Moreover, the facts, circumstances, motive, intent, or purpose of the pleader may be material in determining whether the allegations were made with reasonable cause. *Wollschlager v. Sundstrand Corp.* (1986), 143 Ill. App. 3d 347, 493 N.E.2d 107.

■ Here, we note that on remand of this cause for a hearing on the sanctions issue, the trial court should apply the above-mentioned standards and principles in determining whether sanctions are warranted. We further note that the "time log" filed by attorney Wosik in support of his claim for fees is a "paper" within the meaning of Supreme Court Rule 137. We also note that Wosik's conduct in submitting the time log would only be sanctionable if the court could point to some specific false statement contained in that paper. In that regard, Wosik represented that his time log consisted of "an accurate and correct time consumed by the undersigned legal office as an Attorney At Law." The probate court, however, found only that the time log submitted by attorney Wosik was "ludicrous" and "sanctionable," and that Wosik billed for time while he was not in the United States. The court did not make any specific factual findings that any-

thing in the time log amounted to a false statement or a fraud upon the court. Furthermore, the court did not conduct a hearing at which the question of sanctions was at issue.

Accordingly, we hold that the cause must be reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SLATER and STOUDER, JJ., concur.